**No. 22-16243**

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

_____

MICHAEL DEVIN FLOYD,

*Plaintiff-Appellant*,

v.

San Jose Police Department (SJPD), City of San Jose,
City of San Jose City Attorney Office,
Officer Joshua White of SJPD, Officer Dakota Peters of SJPD,
Sergeant Eugene Ito of SJPD, Officer David Moreno of SJPD,
State of California

*Defendants-Appellees*.

On Appeal from the United States District Court
for the Northern District of California
No. 3:22-cv-00751-CRB
Hon. William H. Orrick

_____

**APPELLANT'S OPENING BRIEF**

_____

Michael Devin Floyd
Pro Se
1901 Iowa Avenue
Kenner, LA 70062
(713)562-7229
mdf3039@gmail.com

*Attorney for Appellant*

1

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS   2

TABLE OF AUTHORITIES   4

INTRODUCTION   8

JURISDICTIONAL STATEMENT   11

ISSUES PRESENTED   14

STATEMENT OF THE CASE   15

     I.   The Incident and Arrest   15

     II.   The State Criminal Proceedings   18

     III.   The Federal Civil Proceedings   29

SUMMARY OF THE ARGUMENT   32

STANDARD OF REVIEW   35

ARGUMENT   36

     I.   Defendants-Appellees' False Statements Must be Stricken   36

     II.   The Numerous Due Process Violations Within Floyd's Criminal Proceedings are Sufficiently Backed by Evidence   37

     III.   A Reasonable Person Cannot Expect the State Criminal Proceedings Will be Fair and Impartial   37

         A. Additional Constitutional Violations in Floyd's State Criminal Proceedings Since the Younger Abstention Order Under Review   38

     IV.   The Statute is Justifiably Attacked on Its Face   39

V.    The District Court Erred in Abstaining Under Younger        39

VI.    Whether Floyd's State Criminal Proceedings Should
be Removed to the Federal Court        41

VII.    Whether Floyd's State Criminal Proceedings Should be
Stayed in the State Court Until the Conclusion
of This Action        42

CONCLUSION        43

STATEMENT OF RELATED CASES        45

CERTIFICATE OF COMPLIANCE        46

CERTIFICATE OF SERVICE        47

USCA9 22-16243 Appellant Brief
USDC CAND 3:22-cv-00751

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Canatella v. California,*
  404 F.3d 1106 (9th Cir. 2005)                                  9,35

*Cline v. Frink Dairy Co.,*
  274 U.S. 445 (U.S., 1927)                                      9,38

*Cooper v. Hutchinson,*
  184 F.2d 119, 124 (3d Cir. 1950)                          9,38,39,42

*Denton v. City of Carrollton, Ga.,*
  235 F.2d 481 (5th Cir. 1956)                                     41

*Dombrowski v. Pfister,*
  227 F. Supp. 556, 571 (E.D. La. 1964), rev'd, 380 U.S. 479
  85 S. Ct. 1116, 14 L. Ed. 2d 22 (1965)              8,9,37,41,42

*Dombrowski v. Pfister,*
  380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965)    8,37,38,39,40

*Dominguez v. California,*
  No. 20-CV-01685-JD, 2020 WL 3892875,
  at *2 (N.D. Cal. July 10, 2020)                              31,40

*Elrod v. Burns,*
  427 U.S. 347, 373 (1976)                                        38

*Garcia v. Superior Ct.,*
  42 Cal. 4th 63, 163 P.3d 939 (2007)                            21

*Gibson v. Berryhill,*
  411 U.S. 564, 578–79, 93 S. Ct. 1689, 1698,
  36 L. Ed. 2d 488 (1973)                                          9

*Gilbertson v. Albright,*

4

381 F.3d 965, 976–78 (9th Cir.2004)     35

*Green v. City of Tucson,*
    255 F.3d 1086, 1093 (9th Cir.2001)     35

*Herrera v. City of Palmdale,*
    918 F.3d 1037 (9th Cir. 2019)     8,12

*Hirsh v. Justs. of Supreme Ct. of State of Cal.,*
    67 F.3d 708, 713 (9th Cir. 1995)     9

*Kenneally v. Lungren,*
    967 F.2d 329 (9th Cir. 1992)     9

*Malam v. Adducci,*
    459 F. Supp. 3d 867 (E.D. Mich. 2020)     9

*Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n,*
    457 U.S. 423, 429, 102 S. Ct. 2515, 2520,
    73 L. Ed. 2d 116 (1982)     8,32

*Morrison v. Davis,*
    252 F.2d 102 (5th Cir. 1958)     41

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
    460 U.S. 1, 10 n.11, 103 S.Ct. 927,
    74 L.Ed.2d 765 (1983)     12

*Parris v. Taft,*
    630 F. App'x 895, 898 (11th Cir. 2015)     12

*People v. Gaines,*
    46 Cal. 4th 172, 205 P.3d 1074 (2009)     22

*Pitchess v. Superior Ct.,*
    11 Cal. 3d 531, 522 P.2d 305 (1974)     21

*Spielman Motor Sales Co., Inc., v. Dodge,*
    295 U.S. 89, 55 S. Ct. 678, 79 L. Ed. 1322 (1935)     41

5

*United States v. Wood,*
    295 F.2d 772, 784–85 (5th Cir. 1961)                41,42

*Warrick v. Superior Ct.,*
    35 Cal. 4th 1011, 112 P.3d 2 (2005)                22

*Withrow v. Larkin,*
    421 U.S. 35, 47, 95 S.Ct. 1456, 1464–1465,
    43 L.Ed.2d 712 (1975)                9

*Younger v. Harris,*
    401 U.S. 31 (1971)                30,32

**Statutes**

California Civil Code                36

California Code of Civil Procedure
    170.1                23
    170.3                23
    170.6                23
    663                23,24
    2030.26                24

California Evidence Code
    1200                27

California Penal Code
    17(b)                28,29
    118                26
    245(a)(2)                20
    417(a)(2)                18,20
    25400(a)(1)                18

United States Code
    28 U.S.C. § 1291                13
    28 U.S.C. § 1331                11
    28 U.S.C. § 1343                11

6

28 U.S.C. § 2283     42
42 U.S.C. § 1971     42
42 U.S.C. § 1983     11,42

**Constitutional Provisions**

United States Constitution
    Article VI, Clause 2: The Supremacy Clause     42
    2nd Amendment     11
    4th Amendment     11
    5th Amendment     11
    6th Amendment     11,38
    8th Amendment     11
    14th Amendment     11

**Rules**

Federal Rules of Appellate Procedure
    4(a)(1)     13
    32(a)(5)     46
    32(a)(6)     46
    32(f)     46

US Court of Appeals Ninth Circuit
    Rule 25-5(f)(1)     47
    Rule 28-2.6     45
    Rule 32-1     46

# INTRODUCTION

Younger abstention is warranted in most cases when there are parallel, pending state proceedings that implicate important state interests. As long as the state court provides an adequate opportunity to raise constitutional challenges, federal courts will abstain since the federal action would have the practical effect of enjoining the state proceedings. "Younger abstention permits federal courts to preserve respect for state functions such that the national government protects federal rights and interests in a way that will not unduly interfere with the legitimate activities of the States." *Herrera v. City of Palmdale, 918 F.3d 1037 (9th Cir. 2019)*

But, abstention is not warranted in all circumstances. If there is a "[showing of] bad faith, harassment, or other extraordinary circumstance", exceptions to Younger are warranted . *Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965). Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 429, 102 S. Ct. 2515, 2520, 73 L. Ed. 2d 116 (1982)*. Many have petitioned that their federal action falls under these exceptions. Few have succeeded, like the petitioner in *Dombrowski v. Pfister*:

> There is, therefore, no substance to the majority's argument that the federal court is here being asked to interfere with orderly state criminal processes, and that if the Court granted relief it would be a precedent for interfering every time a criminal defendant protested that his constitutional rights were invaded. The processes under attack in this case are, allegedly, not the State's usual, orderly, impersonal, legislative and criminal processes. *Dombrowski v.*

*Pfister*, 227 F. Supp. 556, 571 (E.D. La. 1964), rev'd, 380 U.S. 479, 85 S. Ct. 1116, 14 L. Ed. 2d 22 (1965).

Petitioners have also argued that the state tribunal is biased, but most have failed to "overcome a presumption of honesty and integrity in those serving as adjudicators." *Kenneally v. Lungren, 967 F.2d 329 (9th Cir. 1992)* (quoting *Withrow v. Larkin, 421 U.S. 35, 47, 95 S.Ct. 1456, 1464–1465, 43 L.Ed.2d 712 (1975)*). *Hirsh v. Justs. of Supreme Ct. of State of Cal., 67 F.3d 708, 713 (9th Cir. 1995). Canatella v. California, 404 F.3d 1106 (9th Cir. 2005).* One notable case constituting bias was *Gibson v. Berryhill*, where:

> The District Court apparently considered either source of possible bias—prejudgment of the facts or personal interest—sufficient to disqualify the members of the Board. Arguably, the District Court was right on both scores, but we [Supreme Court] need reach, and we affirm, only the latter ground of possible personal interest. *Gibson v. Berryhill, 411 U.S. 564, 578–79, 93 S. Ct. 1689, 1698, 36 L. Ed. 2d 488 (1973)*.

And, indeed, dismissal of abstentions and injunctions are warranted when there is threat of irreparable harm. "The finding that a constitutional violation is likely is sufficient for a court to find irreparable harm, as a factor that courts evaluate in determining whether to grant a preliminary injunction." *Malam v. Adducci, 459 F. Supp. 3d 867 (E.D. Mich. 2020)*. See also *Cooper v. Hutchinson, 184 F.2d 119, 124 (3d Cir. 1950)*. See also *Cline v. Frink Dairy Co., 274 U.S. 445 (U.S., 1927)* where they enjoined proceedings after irreparable harm was found to exist.

This brief documents, with evidence, the numerous procedural and constitutional violations that have occurred within the Plaintiff-Appellant's ongoing state criminal proceedings responsible for the District Court's abstention under *Younger*. The Santa Clara County Court System has brought charges with bad faith, intent to harass the Plaintiff-Appellant. This situation falls under the extraordinary circumstances where *Younger* abstention is not warranted. Readers will come to the conclusion that the state criminal proceedings should be enjoined through removal into federal court, to ensure a fair and impartial trial.

# JURISDICTIONAL STATEMENT

Title 42 of the United States Code Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." Michael Floyd is suing for violations of federal constitutional or statutory right(s) by state or local officials. Those rights include, but are not limited to, the Second Amendment to the United States Constitution, Fourth Amendment to the United States Constitution, Fifth Amendment to the United States Constitution, Sixth Amendment to the United States Constitution, Eighth Amendment to the United States Constitution, and Fourteenth Amendment to the United States Constitution, along with all the decided cases in regards to these Amendments. The district court had jurisdiction pursuant to 28 U.S.C. § 1331 and 1343.

Floyd commenced this action on February 4, 2022, with the filing of the original complaint. (DistrictECF No. 1., 6-ER-1059) The Court dismissed Floyd's complaint with leave to amend to clarify several issues. (DistrictECF No. 10., 6-ER-1060) Floyd filed the operative complaint on March 10, 2022. (DistrictECF No. 14., 6-ER-1060) The First Amended Complaint named additional defendants, including the Attorney General of California in his official and individual capacity. (DistrictECF No. 16., 6-ER-1061) The State of California filed its Motion to Dismiss Floyd's First Amended Complaint on April 28th, 2022, which was

opposed and replied. (DistrictECF No. 34,41,43 (MTD-SOC), 6-ER-1062–1063).

The San Jose Defendants filed their Motion to Dismiss Floyd's First Amended

Complaint on May 04th, 2022, which was opposed and replied. (DistrictECF No.

35,42,45 (MTD-SJD), 6-ER-1062–1063). Floyd filed his Motion to Strike Younger

Abstention Pleadings on June 07th, 2022, which was opposed and replied.

(DistrictECF No. 47,48,51 (Strike), 6-ER-1064). The order on all these motions

was delivered on July 25th, 2022; the order partially granted the State of

California's motion for dismissal, stayed the case under Younger abstention, and

denied the strike of the Younger abstention pleadings by the San Jose Defendants.

(DistrictECF No. 56 (Dismissals-Order), 6-ER-1065).

   Floyd also filed a Motion for Leave for Reconsideration of Abstention under

Younger, but this motion was denied (DistrictECF No. 71,72 (Reconsideration and

Denial), 6-ER-1067).

   Here is a passage in *Herrera v. City of Palmdale, 918 F.3d 1037, 1043 (9th Cir.*

*2019)* when the appellate court decided it had jurisdiction to review the stay under

Younger abstention.

> Under *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 10*
> *n.11, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983),* even the stay—the resolution
> required by our court when granting Younger abstention on damages
> claims—is effectively a final decision and thus the district court order is
> final for purposes of appellate review. See also *Parris v. Taft, 630 F. App'x*
> *895, 898 (11th Cir. 2015)* ("Because the district court stayed the case until
> Mr. Parris's related state criminal proceedings were resolved, the order left

him effectively out of court. Thus, the order is a final decision, and we have appellate jurisdiction.").

  Similar to the cases above, because the district court stayed the case until the related state criminal proceedings are resolved, the order put the Plaintiff out of court. Therefore the order is a final decision. This Court has jurisdiction pursuant to 28 U.S.C. §1291. As mentioned earlier, the order staying the case was delivered on July 25th, 2022. Floyd filed a timely notice of appeal and petition on August 14, 2022; this is within 30 days of the order, which is required under Fed. R. App. P. 4(a)(1) to be considered timely. (DistrictECF No. 56, 6-ER-1065).

# ISSUES PRESENTED

I.   Whether the district court erred in denying the strike of the Defendants' lies and inaccurate statements in their reply in favor of abstention under Younger.

II.  Whether the due process violations occurring during Floyd's state criminal proceedings used to abstain under Younger are sufficiently backed by evidence, transforming them from allegations into facts.

III. Whether it would be unreasonable to assume Floyd will have a fair and impartial trial.

IV.  Whether the statute is justifiably attacked on its face.

V.   Whether the district court erred in abstaining under the Younger doctrine.

VI.  Whether Floyd's state criminal proceedings should be removed to the federal court.

VII. Whether Floyd's state criminal proceedings should be stayed in the state court until the conclusion of this action.

# STATEMENT OF THE CASE

## I.   The Incident and Arrest

On August 18th, 2021, Michael Floyd exercised at Planet Fitness gym on Saratoga Avenue in San Jose, California. Floyd exercised and showered. As Floyd was leaving the changing stall, he noticed another male, Hung Tran, showering fully exposed. A verbal altercation began after Floyd asked Mr. Tran to use the shower curtain. (5-ER-1014). Both parties came face-to-face with each other, arguing. (5-ER-867). Floyd left the altercation and left the gym.

Floyd sat in his car in the parking lot of the gym for approximately 20 minutes when Tran drove by. Tran, upon recognizing Floyd, stopped his car. Tran's car drove past Floyd's vehicle by the time Tran was able to stop. Tran got out of his car, gave Floyd some menacing looks, got back into his vehicle, then backed up his car. He positioned his car in front of Floyd's vehicle, blocking Floyd's exit. Tran then got out of his car again, provided further aggressive looks, got back into his vehicle, then backed up his car into the parking space adjacent to Floyd. Tran performed the same routine, then drove away, leaving Floyd's sight.

Shortly after, 911 dispatch received a call from the reporting party Hung Tran stating Floyd had a gun. (6-ER-1049). Tran alerted the 911 dispatch of the type of vehicle Floyd was driving along with a description of Floyd. (6-ER-1049).

When police arrived at the parking lot, they saw a BMW matching that description. (5-ER-1015). Floyd was driving the BMW. The police officers waited until the BMW left the parking lot and pulled over Floyd shortly after leaving the parking lot. (5-ER-1015). The police officers requested Floyd to exit his car and walk towards the police cars. Once Floyd complied with these orders, the officers frisked Floyd for weapons and proceeded to interrogate Floyd. (5-ER-1015). The police officers asked Floyd if he had a gun. Floyd confirmed that there was a firearm in his vehicle. (5-ER-1015).

Officer Peters lied to Floyd and informed Floyd that it was illegal to have a firearm in his vehicle. He then accused Floyd of improperly transporting a firearm. (6-ER-1018–1020). When Floyd asked why he was pulled over, the officers did not tell him the reason. (6-ER-1019–1021).

When Officer Peters attempted to search Floyd's vehicle, Floyd tried to object. (5-ER-1016–1020). At this point, Officer White slammed Floyd against his police vehicle. Floyd kept yelling to Officer Peters that the officers did not have a right to search his vehicle. (6-ER-1016–1020). Officer White placed Floyd in handcuffs and walked Floyd towards the sidewalk. (5-ER-1016–1020). The officers forced Floyd to sit or kneel on the ground. Floyd informed them he did not want to because of knee issues. After Floyd knelt on the ground, the officers continued to interrogate Floyd. The officers stood in front of Floyd and continued to interrogate

Floyd, asking him questions at their will. In the police reports of Officer Peters and Officer White, the officers falsely claim Floyd informed the officers the firearm within his vehicle was not secured and possibly loaded. Floyd told the officers the firearm was secure in his vehicle. (6-ER-1026).

After all questions were asked and answered, Officer Peters conducted a search of Floyd's vehicle. Officer Peters first searched the areas of the vehicle where a firearm is easily accessible to the driver. Then he turned around and searched the backseat and the items within the backseat. These items include a suitcase and backpack. Then he opened the trunk for inspection. He found the firearm box and ammunition, but not the firearm. Officer Peters kept searching, opening the car's side doors and searching through the entire vehicle until he found the firearm on the rear passenger floorboard. (5-ER-1016).

The officers took the gun to determine the firearm's registration. Floyd told them the gun was legally purchased in Louisiana. Once the firearm registration results came back, the officers reported to Floyd that the firearm was not registered. (5-ER-1016). The officers proceeded to arrest Floyd, removing his belongings out of his pocket and putting him in a police car. (5-ER-1016).

USCA9 22-16243 Appellant Brief
USDC CAND 3:22-cv-00751

## II.    The State Criminal Proceedings

Floyd's first arraignment for criminal charges was held on August 20, 2021.

(4-ER-566). Floyd was charged with a misdemeanor California Penal Code §

417(a)(2) Exhibiting a Weapon and a felony California Penal Code § 25400(a)(1)

Concealed and Loaded Unregistered Firearm. (5-ER-1012). Floyd was still in

police custody from the arrest two days prior and did not have time to find a

lawyer. Public Defender Jessica Burt-Smith helped represent Floyd and secured his

release. By order from the judge, Floyd was released on supervised own

recognizance and instructed to find a lawyer. (5-ER-1010).

Upon release, Floyd searched for a lawyer, but could not find one to his approval.

Floyd also attempted to gather all evidence needed in his defense. Floyd called

Planet Fitness and inquired about the parking lot video surveillance. Planet Fitness

informed him only the police can obtain the surveillance footage. Floyd remained

in contact with the Public Defender who represented him, informing her about his

struggles to obtain the crucial evidence. Floyd went to the courthouse prior to the

next court appearance. He informed the judge of his struggles finding an attorney

and requested representation by the Public Defender's office. The judge told him to

wait until the next court appearance. (5-ER-1004–1009).

At the next court appearance on September 24, 2021, Floyd requested

representation from the Public Defender's office. The Public Defender's office was

appointed and a new court date was scheduled for November 3rd, 2022. (4-ER-566). After clearing a background check, Floyd requested the Public Defender's office to procure the surveillance evidence from Planet Fitness on October 4th, 2021. (5-ER-1003). A private investigator for the Public Defender's office Kathryn Zorb called Floyd approximately 10 days later. (5-ER-982). She informed Floyd she was looking at the video evidence, but would not obtain the video evidence. (5-ER-979). Over the phone, Floyd insisted that she obtain the video surveillance evidence repeatedly. She said the camera was at a bad angle and there was nothing to see. While listening to Floyd's continued insistence she retrieve the video footage, she told Floyd she would not retrieve the surveillance footage and abruptly hung up the phone.

Floyd had one meeting with the Public Defender Polina Beckerson on October 27, 2021. Since the arrest two months earlier, Floyd had been searching for representation, conversing with dozens of attorneys. From those meetings, Floyd gathered enough information to draft motions to suppress the evidence and dismiss the case. (5-ER-989–1002). Floyd informed PD Beckerson about the motions he drafted. PD Beckerson informed Floyd she would not file those motions because it would ruin her reputation. She didn't read the motions.

At the next court appearance on November 3rd, Floyd informed the court he would be representing himself and filed the suppression and dismissal motions he

drafted. The court set a new court date for December 10, 2021. Floyd, now representing himself and able to serve subpoenas, served a subpoena to Planet Fitness for the video surveillance on November 10th. Planet Fitness never produced the video.

On December 2nd, the District Attorney Phong Banh opposing Floyd in the criminal proceedings emailed Floyd to inform Floyd the misdemeanor Cal PC § 417(a)(2) was being amended to a felony Cal PC § 245(a)(2). (5-ER-987–988). Two minutes after that email, the DA emailed Floyd his opposition to Floyd's Motion to Suppress. (5-ER-985–986). Floyd filed a Motion to Dismiss for Vindictive Prosecution and a Motion to Compel Discovery from the DA on December 20th, 2021. (5-ER-934–964). Floyd also filed a Pitchess Motion and Racial Injustice Motion on December 30th, 2021.

There were several continuances. (4-ER-564). Floyd was ushered in front of many judges during those continuances. Also, during one of the December 2021 court appearances that resulted in continuances, Floyd asked the DA why he has not attempted to retrieve the video surveillance footage from Planet Fitness. The DA informed Floyd that he had all the evidence he needed: someone stated Floyd threatened that person with a gun and Floyd had a gun. However, the DA did serve a subpoena to Planet Fitness for the surveillance footage after Floyd filed the Motion to Compel Discovery on December 20th, 2021. (5-ER-974).

Judge Sevely presided over the hearing on January 27, 2022 and ordered a motions hearing on February 14th, 2022 to decide the 4 motions: Vindictive Prosecution, Compelling Discovery, Racial Injustice, and Pitchess Motion.

During this motions hearing, while Floyd was stating his oral arguments, Judge Delgado made Floyd feel extremely uncomfortable. She kept intentionally fidgeting in her chair, taking obnoxious sips of her thermast, and other things to show Floyd she was not paying attention while he was talking. Floyd felt so awkward that he shortened his speeches. Judge Delgado denied and partially dismissed all motions. Judge Delgado also did not allow further discussion into the denial and dismissals.

For example, a Pitchess motion (from *Pitchess v. Superior Ct., 11 Cal. 3d 531, 522 P.2d 305 (1974)*) is a special type of motion for discovery that requests information from a police officer's confidential employment file. This hearing must be held by the court if the defendant shows that it was possible that the officer engaged is some sort of misconduct. Usually facts are alleged by the defense which shows how officer misconduct could've occurred. The defense may establish this by merely providing a different recitation of the factual circumstances, or may deny the facts as presented in the report by law enforcement. *Garcia v. Superior Ct., 42 Cal. 4th 63, 163 P.3d 939 (2007)*. In this examination, the court does not act as the trier of fact and thus will not determine credibility or weigh evidence.

*Warrick v. Superior Ct., 35 Cal. 4th 1011, 112 P.3d 2 (2005), People v. Gaines, 46 Cal. 4th 172, 205 P.3d 1074 (2009).* During the hearing, Judge Delgado elected to review 3 of the 8 categories of misconduct requested by Floyd (A,B,D). (5-ER-965–973). When Floyd attempted to give additional allegations to warrant the review of the other categories, Judge Delgado did not allow Floyd to speak, which is improper protocol for a Pitchess motion hearing. All problems occurring within the motions hearing can be read from the Second Judge Recusal Motion. (5-ER-906–916).

   After that hearing, Floyd filed a motion to recuse Judges Delgado and Sevely. (5-ER-932–933). He also filed a second Racial Injustice motion and a second Compelling Discovery motion. Those motions requested the same items but also alleviated the denial reasons of Judge Delgado: the judge did not allow Floyd to address this during the motions hearing. During the next hearing on February 24, Floyd was allowed to only recuse one judge through his motion. He chose to recuse the presiding Judge Sevely. He was then ordered by the court to request the clerk's office to schedule another motions hearing and court was continued until March 18. However, the clerk directed Floyd to ask the department clerk. Then the Department clerk told Floyd to ask the clerk. Floyd went to the courthouse multiple times to calendar a motions hearing, but couldn't.

Some motions have not been properly filed nor executed. After the February 24th hearing, Floyd drafted a different motion to get Judge Delgado recused under California Code of Civil Procedure § 170.1, 170.3. (5-ER-925–931). But, when Floyd attempted to file the motion, it was denied in the filing system. The courthouse refused to file it in the system, stating the motion must be served to Judge Delgado's clerk. While serving the judge's clerk is necessary, it is also necessary the motion is filed in the filing system. Cal. CCP § 170.3.

The proper procedure for this motion is filing the motion with the court system and serving all parties. The judge has 10 days to respond. If recusal is not agreed upon, a neutral judge determines the recusal. Cal. CCP § 170.3. Instead of these events occurring, the filing was not accepted and Judge Delgado issued an improper order striking the recusal motion. (5-ER-920–924). Floyd drafted another recusal motion. (5-ER-906–916). The filing was not accepted and Floyd served it to Judge Delgado's clerk. Judge Delgado issued another improper order striking the second recusal motion; the second order was untimely, so the judge should have been recused. (4-ER-760–765).

Also, Floyd drafted a Motion to Set Aside under Cal. CCP § 663 for Judge Sevely's ruling of the Peremptory Challenge. (5-ER-917–919). The Peremptory Challenge clause, under Cal. CCP § 170.6, allows for one Peremptory Challenge. It does not state specifically there could only be one judge named in that Challenge.

Floyd stated two judges in his Peremptory Challenge, but Judge Sevely informed Floyd he could only recuse one judge. Custom procedure under CCP § 663 is for the motion to be filed, responded to, and heard during a motions hearing. This did not happen; Floyd's filing stayed "Under Review" for a week. Floyd went to the courthouse to understand the problem with the "Under Review" filing. At the courthouse, Floyd was provided an order from Judge Nishigaya denying the Motion to Set Aside. (5-ER-904–905). Floyd has never met Judge Nishigaya. Floyd did not receive a proper hearing for the motion. The motion was rejected in the filing system shortly after Floyd left the courthouse. (4-ER-588).

Floyd sent the District Attorney an interrogatory, requesting questions to be answered about the Body Worn Camera footage on February 27, 2022. Floyd believes the Body Worn Camera footage was altered and the DA's testimony prior to the alteration would prove it. The District Attorney did not answer the interrogatory within 30 days, a violation of Cal. CCP § 2030.26. Floyd drafted a Motion to Compel Discovery of the Interrogatory (4-ER-754–759), but this was rejected in the filing system. (4-ER-587).

At the next hearing on March 18, 2022, Floyd informed Judge Chiarello of the motions hearing calendar problems. Judge Chiarello still decided to proceed with beginning the preliminary hearing, instead of helping schedule a motions hearing. The preliminary hearing was moved to a different department (Dept 39) and Judge

24

Peterson presided over the hearing. During this first session of the preliminary examination, the reporting party Hung Tran was examined by the DA and cross examined by Floyd. Floyd, through questioning, made Tran alter his confession during the cross-examination. (5-ER-773). As noted above, Floyd frustrated all avenues but couldn't retrieve the video surveillance footage from Planet Fitness. It would have shown what happened in the parking lot; it would have shown Floyd was not the aggressor. Through cross-examining Tran, Floyd did, however, make Tran commit perjury while testifying.

Tran was also the aggressor in the male locker room within Planet Fitness. Although Tran attempted to make Floyd into the aggressor when examined by the DA, Tran's story fell short upon cross-examination and he (Tran) altered a crucial fact during the cross-examination.

Prior to the cross-examination, Hung Tran has admitted that the initial argument occurred because Floyd was frustrated about observing Hung Tran showering fully-exposed, requesting Hung Tran to close the shower curtain. He first states the reason for the initial argument to the 911 Dispatch in their conversation on August 18, 2021 (6-ER-1052). Tran then admits this fact to Officer White the next day when Tran was recounting the events from the previous night (5-ER-1014). During Tran's initial examination by the DA during the preliminary hearing, Tran admits

to this fact (5-ER-865). Therefore, Tran's memory of the encounter in the locker room was accurate enough during the DA's examination.

During the cross-examination, Hung Tran altered his story about the locker room encounter. Tran told the court he did not remember where he (Tran) was located when Tran first saw Floyd and Tran said he (Tran) was not sure if he (Tran) was in the shower. Tran then told the court that he (Tran) was outside the shower when Floyd first saw him (Tran) naked (5-ER-774). Tran's statements during the cross-examination directly conflict with his statements during the examination, 911 call, and statement to police. Thus, Tran committed felony perjury under California Penal Code § 118.

The first preliminary hearing session concluded with more examinations of Tran and the first examination of Officer White by the DA. There were a couple of continuances after the first preliminary hearing session. (4-ER-564). During this time, Floyd attempted to schedule a motions hearing. The requests to be put on calendar for the motions hearing department were denied and rejected from the court filing system.

During the second session of the preliminary hearing on May 12th, 2022, while Floyd was cross-examining Officer White, Floyd attempted to introduce Officer White's police report into evidence. (4-ER-640). The presiding Judge Elizabeth Peterson informed Floyd the police report was hearsay and inadmissible as

evidence. Floyd, during lunch break, researched the California laws on hearsay evidence. Since the police officer was a testifying witness, his police report is admissible as evidence. (California Evidence Code § 1200). After the lunch break, Floyd informed Judge Peterson of the admissible evidence. Judge Peterson still did not allow the evidence to be admitted. (4-ER-640).

The police reports provide a narrative of the encounter from the eyes of the officer directly after the encounter ended. In the police report, Officer White states that Officer Peters attempted to search Floyd's vehicle, then Floyd attempted to move toward Floyd's vehicle, then there was a short struggle, then Floyd was placed in handcuffs. (5-ER-1016). This is not what the Body Worn Camera footage shows, nor is it what Officer White deems the truth of events after White changed his story. During the examination and cross-examination, Officer White stated that Floyd made a move towards Floyd's vehicle, which is why White slammed Floyd against White's police car and placed Floyd in handcuffs. (4-ER-619–633). Then, after watching White's Body Worn camera, it became apparent Floyd did not make any movements towards Floyd's vehicle.

Officer White changed his story to Floyd's arms made a sudden movement, as if Floyd was reaching for a weapon. (4-ER-633)The movement he was referring to was not noticeable from observing the Body Worn Camera footage. Before Floyd was placed in handcuffs, Officer White held Floyd's hands behind his back. In fact,

as soon as Floyd exited his vehicle, his person was searched by Officer White with Floyd's hands held behind his back. After this search, Officer White continued to hold Floyd's hands behind his back, restraining his movement while Officer Peters was interrogating Floyd.

When Floyd pointed out that Officer White had previously searched Floyd for weapons, Officer White stated the search of Floyd's person was not finished. Officer White told the court that although he frisked Floyd's back, legs, pockets, waistline, and arms, he (Officer White) had yet to search Floyd's chest area. After searching the areas noted above, Officer White stopped frisking Floyd. Floyd informed Officer White there was a firearm inside his vehicle. Then, more than 30 seconds of questioning by Officer White and Officer Peters passed by, with Floyd's hands held behind his back. Officer White did not make any additional efforts to continue the search, nor were there ever any efforts to search the areas unfinished by Officer White for the remainder of the traffic stop and arrest.

Prior to the preliminary hearing, Floyd filed a Motion 17b. Both of the felony charges are wobblers: they can be reduced to misdemeanors through Cal. PC 17b motion. (4-ER-567–586). Although Floyd met the criteria for the wobblers to be reduced to misdemeanors, the DA opposed the reduction to misdemeanors.

At the following hearing on June 14th, the DA informed the court he opposed Floyd's Motion 17b and planned to debate the opposition orally. He was instructed

to write his opposition to Floyd's Motion 17b before the next hearing. The DA

submitted his opposition to the Motion 17b. (ER-577–581). When Floyd attempted

to submit the reply, he could not submit the reply through the court filing system.

There were problems with the website. Floyd could not electronically file the

documents with the court filing system responsible for his criminal proceedings.

Floyd went to the courthouse and manually filed the document. (ER-582–586).

The initial arrest and arraignment was on August 18th and 20th, 2021. It has been

more than a year and the case has not concluded.

## III.    The Federal Civil Proceedings

Plaintiff commenced this action on February 4, 2022, with the filing of the

original complaint. (DistrictECF No. 1., 6-ER-1059) The Court dismissed

Plaintiff's complaint with leave to amend to clarify several issues. (DistrictECF

No. 10., 6-ER-1060) Plaintiff filed the operative complaint on March 10, 2022.

(DistrictECF No. 14., 6-ER-1060) The First Amended Complaint named additional

defendants, including the Attorney General of California in his official and

individual capacity. (DistrictECF No. 16., 6-ER-1060) The San Jose Defendants

filed the Motion to Dismiss Plaintiff's First Amended Complaint on May 4th, 2022.

(DistrictECF No. 35 (MTD-SJD), 6-ER-1062–1063). [San Jose Defendants refers

to all Defendants except the State of California]

In the San Jose Defendants' Motion to Dismiss, the SJD requested abstention under the doctrine *Younger v. Harris, 401 U.S. 31 (1971)*. (DistrictECF No. 35,42,45 (MTD-SJD), 6-ER-1062–1064). The State of California later joined the request for abstention. (DistrictECF No. 46 (Joinder-MTD-SJD), 6-ER-1064). In their Motion to Dismiss, the SJD argue that the Plaintiff's state criminal proceedings meets all the criteria for abstention under *Younger*. (DistrictECF No. 35 at 12-7 (MTD-SJD), 6-ER-1062). In the opposition to the SJD' Motion to Dismiss, the Plaintiff argues the multiple violations of due process throughout the ongoing state proceedings constitute "bad faith" and thus make abstention inappropriate. (DistrictECF No. 42 at 8-1 (Opp-MTD-SJD), 6-ER-1063). In reply to the opposition, the SJD attempted to make the Plaintiff's frustrations in the criminal proceedings stem from improper self-representation. The SJD lied several times about the Plaintiff's self-representation and California laws. (DistrictECF No. 45 (Reply-MTD-SJD), 6-ER-1064).

The Plaintiff filed his Motion to Strike Younger Abstention Pleadings, which was opposed and replied. (DistrictECF No. 47,48,51 (Strike), 6-ER-1064). The Plaintiff's motion struck the inaccurate statements in the SJD Reply to their Motion to Dismiss, and showed how all his actions in the state proceedings were appropriate. (DistrictECF No. 47 (Strike), 6-ER-1064). The SJD admitted to lying in their opposition. (DistrictECF No. 48 at 2-9 (Opp-Strike), 6-ER-1064).

The order on these motions was delivered on July 25th, 2022; the order stayed

the case under Younger abstention, and denied the strike of the Younger abstention

pleadings by the San Jose Defendants. (DistrictECF No. 56 (Dismissals-Order),

6-ER-1065). Judge Orrick delivered the order, stating the problems in the state

proceedings do not "rise to the level of bad faith". Citing *Dominguez v. California,

No. 20-CV-01685-JD, 2020 WL 3892875, at \*2 (N.D. Cal. July 10, 2020)*.

(DistrictECF No. 56 at 6-6 (Dismissals-Order), 6-ER-1065).

# SUMMARY OF THE ARGUMENT

This case was stayed under the Younger abstention doctrine due to Floyd's ongoing state criminal proceedings. Younger abstention permits federal courts to "preserve respect for state functions such that the national government protects federal rights and interests in a way that will not 'unduly interfere with the legitimate activities of the States.' " *Younger, 401 U.S. at 43, 91 S.Ct. 746*. But when such activities are deemed illegitimate, the federal courts have a right to intervene. An exception to that general rule exists if there is a "showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate." *Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 435, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982)*.

Do the facts presented in the Statement of the Case in regards to Floyd's ongoing state criminal proceedings make abstention under Younger inappropriate? So far, Floyd has engaged with a Public Defender's office uncooperative with the procurement of evidence that also refused to file Floyd's motions he drafted. As far as Floyd's interactions with the DA, charges were vindictively amended and the DA opposes the reduction of charges to misdemeanors. The court filing system hosting his state proceedings has decided at their discretion when to accept filing of motions. On two occasions, motions rejected from the filing system were stricken. On one occasion, a motion rejected from the filing system was ruled on

32

without a proper hearing. After previously accepting two compel discovery

motions, the court filing system decided not to accept the Motion to Compel

Discovery of the Interrogatory requested from the DA. (The DA eventually

answered the interrogatory). During a motions hearing, Judge Delgado did not pay

attention to a word Floyd said and made Floyd feel uncomfortable when speaking.

Judge Delgado also did not provide Floyd an opportunity to alleviate concerns with

regards to the Racial Injustice motion (although unopposed, she said it was too

vague and prevented further discussion), Motion to Compel Discovery (she said

there was no reason to provide the footage from Elmwood Correctional Facility

Floyd requested), and Pitchess Motion (California courts have ruled the Defense

should be given opportunity to state allegations sufficient to warrant review into all

categories).

   In addition, the court has been uncooperative with Floyd's attempts to schedule

motions hearings before and during the preliminary hearing. Also, Judge Peterson

refused to admit the police report as evidence during the preliminary hearing.

   In defense for Floyd, the witness Tran was forced to alter his story about the

initial encounter within the locker room upon cross-examination. Also, Officer

White altered his story about Floyd's initial detainment prior to handcuffs.

   All of the aforementioned statements in this section are facts. There is only one

allegation: Floyd is confident the Body Worn Camera footage from the officers has

been altered. The current footage does not show the actual encounter and the officers' aggression during the traffic stop and arrest.

The evidence transforms Floyd's allegations into facts. From those facts, it would be unreasonable to assume Floyd can have a fair and impartial trial in his ongoing state criminal proceedings. Because the San Jose Defendants chose to lie in their Reply to Floyd's Opposition to their Motion to Dismiss in regards to those due process violations, those pleadings should be struck. Abstention under Younger is inappropriate under these circumstances. Floyd's state proceedings should be stayed in state court and removed from state court, ensuring an impartial trial.

# STANDARD OF REVIEW

An appellate court reviews de novo whether abstaining from exercising federal jurisdiction is required under the doctrine of Younger abstention. *Canatella v. California, 404 F.3d 1106 (9th Cir. 2005)*

We review de novo whether abstaining from exercising federal jurisdiction is required under *Younger. Green v. City of Tucson, 255 F.3d 1086, 1093 (9th Cir.2001)* (en banc), overruled, in part, on other grounds by *Gilbertson v. Albright, 381 F.3d 965, 976–78 (9th Cir.2004)* (en banc). *Canatella v. California, 404 F.3d 1106, 1109 (9th Cir. 2005)*

# ARGUMENT

## I.   Defendants-Appellees' False Statements Must be Stricken

The San Jose Defendants lied in their Reply to their Motion to Dismiss. The SJD blamed the problems within Floyd's state court proceedings on Floyd's pro se representation. Their lies and false statements slandered Floyd's reputation. The SJD led the court to believe Floyd improperly cited California laws when filing motions. SJD claimed Floyd used California Civil Code when Floyd used California Code of Civil Procedure. SJD also claimed the recusal motions were denied and properly handled, which is a false statement. Those motions weren't even accepted in the filing system.

The Plaintiff-Appellant filed a Motion to Strike those Pleadings; those false statements directly affected the court's perception of Floyd's criminal proceedings used for Younger abstention. In their opposition to that motion, the SJD admitted to lying about Floyd using California Civil Code. But, the SJD also countered with more false statements. SJD stated Floyd's Compelling Discovery of Interrogatory from DA was improperly motioned; however, Floyd filed two previous compelling discovery motions that were accepted with references to the same cases. SJD recounted the same inaccurate statements Judge Delgado used to strike the recusal motions; Judge Delgado struck the recusal motions claiming Floyd used the judge's rulings as grounds for requesting recusal, but nowhere in Floyd's motions

were the judge's rulings mentioned as grounds for recusal. SJD also claimed Floyd

improperly filed motions during his criminal proceedings without giving any

examples; Floyd properly filed all motions.

## II.   THE NUMEROUS DUE PROCESS VIOLATIONS WITHIN FLOYD'S CRIMINAL PROCEEDINGS ARE SUFFICIENTLY BACKED BY EVIDENCE

The Plaintiff-Appellant mentioned the continuous problems within his state

criminal proceedings in the Statement of Facts section, since they are backed by

facts. Those due process violations are sufficiently backed by evidence.

> But the crowning glory of American federalism is not States' Rights. It is the protection the United States Constitution gives to the private citizen against all wrongful governmental invasion of fundamental rights and freedoms. When the wrongful invasion comes from the State … federal courts must expect to bear the primary responsibility for protecting the individual. *Dombrowski v. Pfister, 227 F. Supp. 556, 570 (E.D. La. 1964), rev'd, 380 U.S. 479, 85 S. Ct. 1116, 14 L. Ed. 2d 22 (1965).*

## III.   A REASONABLE PERSON CANNOT EXPECT THE STATE CRIMINAL PROCEEDINGS WILL BE FAIR AND IMPARTIAL

After observing the facts and evidence in support of the facts, a reasonable

person would not expect the remainder of Floyd's state criminal proceedings to be

fair and impartial.

> Allegations, if true, depicting situation in which defense of state's criminal prosecution would not assure adequate vindication of constitutional rights and suggesting that substantial loss or impairment of freedoms of expression would occur if plaintiffs were required to await state court's disposition and ultimate review in Supreme Court of any adverse determination established

irreparable injury necessary to warrant injunctive relief. *Dombrowski v. Pfister, 380 U.S. 479, 85 S. Ct. 1116, 14 L. Ed. 2d 22 (1965)*

Spending time in jail and defending yourself in criminal proceedings without adequate due process of law are both irreparable injuries. Continuous, ongoing constitutional violations would also constitute irreparable injuries. "The deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" paraphrasing *Elrod v. Burns, (1976) 427 U.S. 347, 373*. As seen from the due process violation below:

> "… it seems to us that to break off an attorney-client relation while a case is pending for trial after a reversal must fall within the irreparable class. How can such an injury be measured or repaired?" *Cooper v. Hutchinson, 184 F.2d 119, 124 (3d Cir. 1950)*. See also *Cline v. Frink Dairy Co., 274 U.S. 445 (U.S., 1927)* where they enjoined proceedings after irreparable harm was found to exist.

## A. ADDITIONAL CONSTITUTIONAL VIOLATIONS IN FLOYD'S STATE CRIMINAL PROCEEDINGS SINCE THE YOUNGER ABSTENTION ORDER UNDER REVIEW

Since the order to abstain under *Younger*, Floyd has faced additional problems with his state criminal proceedings. Floyd requested court-appointed representation after his preliminary hearing. However, Floyd's application was rejected by the Public Defender's office. Floyd filed a Petition for a Writ of Prohibition with the California Court of Appeals. (2-ER-18–47). In this petition, Floyd highlights the rejection for assistance from the Public Defender's office. This rejection, even after Floyd showed adequate proof of financial status, infringes on Floyd's Sixth

Amendment right to counsel. There were also obvious errors in the preliminary

hearing and second motions hearing rulings that Floyd also detailed in the petition.

(2-ER-18–47).

## IV.     THE STATUTE IS JUSTIFIABLY ATTACKED ON ITS FACE.

"We hold the abstention doctrine is inappropriate for cases such as the present

one where, unlike Douglas v. City of Jeannette, statutes are justifiably attacked on

their face … as applied for the purpose of discouraging protected activities."

*Dombrowski v. Pfister, 380 U.S. 479, 489–90, 85 S. Ct. 1116, 1122, 14 L. Ed. 2d 22*

*(1965).*

Under this circumstance, California firearm laws are also attacked on their face.

The current laws governing firearm transportation within vehicles are

unconstitutional for many reasons, highlighted in the Amended Complaint. The

requirements of these laws make firearms inoperable for self-defense purposes in

vehicles. Also, if the suspect's refusal of a firearm inspection can create probable

cause for arrest, that suspect must be aware of those consequences and the Miranda

rights.

## V.     THE DISTRICT COURT ERRED IN ABSTAINING UNDER YOUNGER

The 'arrest' by the federal courts of the processes of the criminal law within
the states (is) to be supported only on a showing of danger of irreparable
injury 'both great and immediate'. *Cooper v. Hutchinson, 184 F.2d 119, 124
(3d Cir. 1950)*

In the order granting Younger abstention and staying the case, Judge Orrick does not dispute the violations of due process stated by the Plaintiff. Instead, he concludes these violations make the case similar to *Dominguez v. California, No. 20-CV-01685-JD, 2020 WL 3892875, at *2 (N.D. Cal. July 10, 2020)*, where Younger abstention applied despite "many allegations about inconsistent statements from witnesses, biased police reports and adverse rulings from the trial judge." What would make this case different and more consistent with the rulings in *Dombrowski v. Pfister, 380 U.S. 479, 85 S. Ct. 1116, 14 L. Ed. 2d 22 (1965)*?

The reason why the appeal should be granted is because this action relates more to *Dombrowski v. Pfister* than the case used for Judge Orrick's order *Dominguez v. California*. The difference is the evidence. The plaintiff in Dominguez "presents many allegations, but very little evidence in support." *Dominguez v. California, No. 20-CV-01685-JD, 2020 WL 3892875, at *2 (N.D. Cal. July 10, 2020)*. Whereas the plaintiff in Dombrowski delivers the evidence, transforming allegations into facts. Likewise, the violations of due process and the US Constitution the Plaintiff-Appellant present in this action are presented and backed by evidence and law. Proper filings were rejected. Recusal motions were improperly stricken. Crucial evidence was not obtained by the Public Defender's office. Crucial evidence was not admitted during the preliminary hearing. Prosecution has been

vindictive. Now, Floyd's application for readmission into the Public Defender's office was rejected. The Plaintiff-Appellant has provided the evidence in support of all these claims, or will be able to show proof of all these allegations.

**VI. WHETHER FLOYD'S STATE CRIMINAL PROCEEDINGS SHOULD BE REMOVED TO THE FEDERAL COURT.**

1. Courts in this circuit [5th] have repeatedly enjoined the enforcement of state laws where enforcement infringed on federal rights. They have done so when the statute was unconstitutional on its face and when it was unconstitutional as applied. They have issued the injunction both before and after criminal prosecutions have been started. *Dombrowski v. Pfister, 227 F. Supp. 556, 580 (E.D. La. 1964), rev'd, 380 U.S. 479, 85 S. Ct. 1116, 14 L. Ed. 2d 22 (1965)*

2. *Spielman Motor Sales Co., Inc., v. Dodge, 295 U.S. 89* where on page 95, 55 S.Ct. 678, at page 680, 79 L.Ed. 1322, the Court says: 'To justify such interference there must be exceptional circumstances and a clear showing that an injunction is necessary in order to afford adequate protection of constitutional rights. The case before us presents a clear illustration of such exceptional circumstances as would make the general rule inapplicable.' See also *Denton v. City of Carrollton, Georgia, 5 Cir. 1956, 235 F.2d 481. Dombrowski v. Pfister, 227 F. Supp. 556, 582 (E.D. La. 1964), rev'd, 380 U.S. 479, 85 S. Ct. 1116, 14 L. Ed. 2d 22 (1965)*

3. This is not such a case as requires the withholding of federal court action for reasons of comity, since for the protection of civil rights of the kind asserted Congress has created a separate and distinct federal cause of action. *Morrison v. Davis, 5 Cir., 1958, 252 F.2d 102, 103, certiorari denied, 1958, 356 U.S. 986, 78 S.Ct. 1008, 2 L.Ed.2d 1075*

4. The foundation of our form of government is the consent of the governed. Whenever any person interferes with the right of any other person … he acts like a political termite to destroy a part of that foundation. A single termite or many termites may pass unnoticed, but each damages the foundation, and if that process is allowed to continue the whole structure may crumble and

fall even before the occupants become aware of their peril. Eradication of political termites, or at least checking their activities, is necessary to prevent irreparable damage to our Government. *United States v. Wood, 295 F.2d 772, 784–85 (5th Cir. 1961).*

## VII. WHETHER FLOYD'S STATE CRIMINAL PROCEEDINGS SHOULD BE STAYED IN THE STATE COURT UNTIL THE CONCLUSION OF THIS ACTION

1. In *United States v. Wood, 5 Cir. 1961, 295 F.2d 772* a Registrar of Voters in a Mississippi County where there were no Negroes registered, without provocation, pulled out his revolver and ordered a Negro to leave his office. As he was leaving, the Registrar struck him on the back of his head with the revolver. The Negro had conducted a school for voting registration and had encouraged Negroes to register. He was charged with disturbing the peace. The Court of Appeals for this Circuit enjoined his prosecution not just on the violation of his rights but on the ground that the prosecution, 'regardless of outcome, will effectively intimidate Negroes in the exercise of their right to vote'. *295 F.2d at 777.* The Court pointed out that the Civil Rights Act, 42 U.S.C.A.§1971, expressly authorized injunctive relief against state criminal court proceedings and thus falls squarely within the stated exception to Section 2283. See also *Cooper v. Hutchinson, 3 Cir., 1950, 184 F.2d 119,* holding that 42 U.S.C.A. § 1983 authorizes an injunction against state court proceedings as an exception to Section 2283. *Dombrowski v. Pfister, 227 F. Supp. 556, 582 (E.D. La. 1964), rev'd, 380 U.S. 479, 85 S. Ct. 1116, 14 L. Ed. 2d 22 (1965).*

2. There is not the slightest doubt as to the constitutional power of a federal court to block prosecution in a state court under an unconstitutional statute violative of federally protected rights. We need look only to the Supremacy Clause to resolve any doubt. And Congress set up the three-judge court for the precise purpose of passing on whether a federal district court should enjoin enforcement of a state law. Moreover, whether the state law is a civil or criminal statute is immaterial in terms of constitutionality. *Dombrowski v. Pfister, 227 F. Supp. 556, 579 (E.D. La. 1964), rev'd, 380 U.S. 479, 85 S. Ct. 1116, 14 L. Ed. 2d 22 (1965)*

## CONCLUSION

It is undeniable that federal courts have an obligation, not just a choice, to intervene in state proceedings when there is a possibility of irreparable injury 'both great and immediate' stemming from constitutional violations in those state proceedings and/or laws. The question at hand is when should the federal courts intervene. How many constitutional violations could a state court system muster before the federal courts abide by their obligation and enjoin state proceedings?

Since the order-in-dispute that granted abstention under *Younger*, there have been other constitutional violations within those proceedings, along with obvious errors in judgments on motions. The Plaintiff-Appellant's application for assistance from the Public Defender's office was rejected, although he provided proof of income from the past two years. This is a clear violation of the Plaintiff's Sixth Amendment right to counsel. A sealed hearing occurred on November 9, 2022, where the Plaintiff-Appellant and the Public Defender's office disputed the problems with his application for assistance. The representative from the Public Defender's Office, Ariel Toran, lied during the hearing. The presiding Judge Nona Klippen came to inaccurate conclusions. It is recommended to read the provided notes about the hearing. (2-ER-16–17). The Plaintiff-Appellant is still moving forward without representation.

The multiple, continuous, and on-going violations of constitutional rights create a duty for federal courts to enjoin the Plaintiff-Appellant's state proceedings. A reasonable person could not believe the state proceedings in-question will be fair and impartial going forward. Judgment of the District Court should be reversed. The state proceedings should be removed to federal court and stayed until the conclusion of this action.

Date:   November 21, 2022

_____

Michael Devin Floyd
*Pro Se Attorney for Appellant*

# UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

**Statement of Related Cases Pursuant to Circuit Rule 28-2.6**

The undersigned attorney or self-represented party states the following:

[**X**] I am unaware of any related cases currently pending in this court (Ninth Circuit).

[**X**]    I am aware of the following related case currently pending in US California Northern District Court: 3-22-cv-00750 Floyd v. Santa Clara Department of Correction et al. The order relating the cases will be attached, along with the order clarifying the relationship between the cases. (4-ER-561–562).

**Signature** _____ **Date** __November 21, 2022__

# UNITED STATES COURT OF APPEALS

# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

**9th Cir. Case Number(s)**  22-16243

I am the attorney or self-represented party.

**This brief contains ____ 9200 ___ words,** excluding the items exempted by

Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R.

App. P. 32(a)(5) and (6).

I certify that this brief:

[X] complies with the word limit of Cir. R. 32-1 (less than 14,000).

**Signature** _____ **Date** _November 21, 2022_

USCA9 22-16243 Appellant Brief
USDC CAND 3:22-cv-00751

## CERTIFICATE OF SERVICE

In accordance with Ninth Circuit Rule 25-5(f)(1), the electronic filing of the brief and excerpt of records will be electronically served upon the appellee; no certificate of service is required.